I write specially to explain my rationale in concurring with the main opinion. I believe that USAMC may pursue this claim because the two statutes at issue cover two different classifications of indigents. Section 14-6-19, Ala. Code 1975, requires a county to provide necessary medical attention to indigent prisoners housed in the county, whether or not they are residents of the county in which they are imprisoned. Section 22-21-291, Ala. Code 1975 (hereinafter "AHCRA"), enacted over 100 years later, places the responsibility for the medical care of indigent residents on the county in which they reside. To be classified as an indigent under AHCRA, a person must have "resided continuously in this state for not less than one year." Ala. Code 1975, § 22-21-292. There are probably numerous indigent prisoners in this State who are neither residents of this State nor residents of the county in which they are imprisoned, yet § 14-6-19 requires that the county provide medical care for them. Furthermore, a health-care provider who seeks remuneration for medical care provided to indigent prisoners should seek relief under § 14-6-19 rather than under § 22-21-291. Surely if USAMC and Escambia County had intended that their 1983 agreement encompass indigent prisoners, they would have expressly so provided. In addition to specifically referring to § 22-21-291 in the agreement, the parties referred to "indigent residents," in accordance with the statute. If the parties to the 1983 agreement intended that indigent prisoners be covered by the agreement, they could have cited the earlier statute, § 14-6-9. For these reasons, I agree with the main opinion that USAMC may pursue a claim against Escambia County under § 14-6-9, Ala. Code 1975. *Page 347